IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TONYA LOUISE TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 13-cv-613-TLW ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Tonya Louise Taylor seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 10). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**INTRODUCTION**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a 33-year old female, applied for Title XVI benefits with a protective filing date of February 3, 2010. (R. 141-47). Plaintiff alleged a disability onset date of March 1, 2008. (R. 151). Plaintiff claimed she was unable to work due to an enlarged heart, depression, high blood pressure, high cholesterol, and a learning disability. (R. 155). Plaintiff's claim for benefits was denied initially on September 7, 2010, and on reconsideration on February 24, 2011. (R. 81-84). Plaintiff then requested a hearing before an administrative law judge (ALJ), and the ALJ held a hearing on January 20, 2012. (R. 41-80). The ALJ issued a decision on February 24, 2012, denying benefits and finding plaintiff not disabled because she was able to perform other work. (R. 24-34). The Appeals Council denied review, and plaintiff appealed. (R. 1-4).

**Plaintiff's Medical History**

Plaintiff saw a physician at Tulsa Family Medicine on August 8, 2008, to discuss her blood pressure. (R. 247). At that time, plaintiff was not taking blood pressure medication. She claimed the medication she took two years prior did not help. At the visit, plaintiff reported symptoms of dizziness, and the physician restarted her on blood pressure medicine. (R. 247-48).

Plaintiff reported to Tulsa Family Medicine on May 18, 2009, for a blood pressure check. She was noncompliant with her medication until two weeks before the visit. (R. 242). The physician noted that plaintiff complained of symptoms consistent with hypertension, such as headaches, visual disturbances, and dizziness. (R. 243). Plaintiff denied anxiety or depression.

Id. The physician sent plaintiff to Hillcrest Medical Center for hypertensive urgency, and the hospital admitted her for overnight observation. (R. 250). Plaintiff's evaluation revealed her history of hypertension. (R. 257). She reported that eight years prior, she saw a doctor at OU Family Clinic who prescribed blood pressure medicine which she took sporadically. She stated her last blood pressure prescription was in January 2009, but she did not take the medication because it did not help. Id. Plaintiff was discharged from Hillcrest Medical Center on May 19, 2009, after medication was administered and her condition stabilized. (R. 258).

Plaintiff returned to Tulsa Family Medicine on July 20, 2009, for a medication refill. Plaintiff's physician reported that plaintiff had lost weight and had been compliant with her medication since hospital discharge for hypertensive urgency. (R. 238). Plaintiff denied anxiety, mental problems, or depression. Id. Plaintiff's physical examination and review of symptoms were normal, she had no risk factors, no target organ damage, and her blood pressure was stable. (R. 239-40).

On January 24, 2010, plaintiff reported to the Hillcrest Medical Center emergency department with a head injury. She reported a slight headache that occurred when her blood pressure increased. (R. 262). She reported that she failed to take her blood pressure medication that day. Id. Plaintiff's physical examination and review of symptoms were normal except for her slight headache. (R. 262-63).

Tulsa Center for Behavioral Health assessed plaintiff on February 18, 2010. She was diagnosed with depressive disorder, benign hypertension, and assigned a Global Assessment of Functioning ("GAF") score of fifty-five. (R. 227). She was referred to Tristesse Grief Center, Family and Children Services, and OU Psychology Clinic. (R. 228). Plaintiff also received a prescription for Prozac. Id.

On May 11, 2010, plaintiff reported to the Hillcrest Medical Center emergency department and complained of sporadic headaches and dizziness. The treating physician noted that these symptoms coincided with blood pressure medication noncompliance. (R. 265). Under the section "Past Medical and Surgical History," the following appears, "Patient has no emotional, spiritual, or cognitive needs noted." Id.

Minor Gordon, Ph.D., conducted a psychological consultative examination of plaintiff on July 28, 2010. Plaintiff's chief complaint was "high blood pressure, an enlarged heart, and high cholesterol as well as problems with depression." (R. 304). Plaintiff reported that her symptoms of depression included wanting to harm others, getting angry, stress, and mood swings. Id. She stated she has never been admitted for any psychological problems on an inpatient basis. Id. She reported one visit to Tulsa Center for Behavioral Health, several visits to Neighbor for Neighbor, and ongoing treatment at Neighbor for Neighbor for depression. Id. Plaintiff's mood was one of mild depression, she slept excessively, and she had a low energy level. (R. 305). Dr. Gordon noted that her level of intelligence based on casual conversation was low if not average. Id. Her social-adaptive behavior was low, and she would have difficulty passing judgment in a work situation depending on the complexity of the task. Id. Dr. Gordon assigned a GAF score of seventy. (R. 306).

On January 4, 2011, Family and Children's Services evaluated plaintiff and diagnosed her with major depressive disorder. (R. 345). Plaintiff's symptoms included "feeling sad, tearfulness, dwelling on negative thoughts, worrying about health, thoughts of death, irritability, low energy and motivation, [and] increased sleeping." (R. 350). Plaintiff reported a history of diagnosis of mental retardation, high blood pressure, and high cholesterol. Id. Plaintiff was

assigned a GAF score of forty-five. (R. 351). The basis for her AXIS I, II, and III scores are the following three statements:

1. AXIS I – "Client reports history of being diagnosed with mental retardation."

2. AXIS II – "Client reports high blood pressure and high cholesterol."

3. AXIS III – "Client has little social support, is unemployed, and has no income."

(R. 350). Family and Children's Services had a number of recommendations, including individual rehabilitation service to improve management of coping skills for depression, and medication management. Plaintiff's prognosis was fair pending her participation in treatment. Id. Plaintiff returned to Family and Children's Services on January 12, 2011, (R. 352) and on May, 2, 2011 for a medication refill. (R. 354). The case manager noted that plaintiff had been compliant with keeping physician appointments. Id.

Family and Children Services discharged plaintiff on May 27, 2011. Plaintiff's discharge summary notes that she ". . . has failed to engage in services or respond to outreach attempts." (R. 355). During this visit, plaintiff was assigned a GAF score of forty-five. (R. 358). This score was based on the following statements as to AXIS I, II, and III:

1. AXIS I – "Smptoms[sic] include feeling sad, tearfulness, dwelling on negative thoughts, worrying about health, thoughts of death, irritability, low energy, low motivation, increased sleeping."

2. AXIS II – "Client reports history of being diagnosed with mental retardation."

3. AXIS III – "Client reports high blood pressure and high cholesterol."

(R. 357).

**The ALJ's Decision**

The ALJ determined that plaintiff had performed no substantial gainful activity since February 3, 2010. (R. 26). The ALJ found that plaintiff had the severe impairments of hypertension and depression. Id. After considering plaintiff's impairments, the ALJ found that plaintiff's impairments did not meet or medically equal a listing, specifically listing 3.00 (respiratory system), 4.00 (cardiovascular system), and 12.04 (affective disorder). (R. 27). In reviewing plaintiff's affective disorders under the "paragraph B" criteria, the ALJ determined that plaintiff had mild restriction in her activities of daily living; moderate difficulties with social functioning; mild difficulties with concentration, persistence and pace; and no episodes of decompensation. Id. Plaintiff also did not meet the "paragraph C" criteria. Id. The ALJ then reviewed plaintiff's testimony and medical evidence and determined plaintiff's residual functional capacity ("RFC"). (R. 28).

**Plaintiff's Testimony**

Summarizing plaintiff's testimony, the ALJ noted that she lives in a single story home. She has not completed eleventh grade or a GED, and has no trade school training. She drives locally and has no restrictions on her driver's license. She is able to stand for a few hours before she has a dizzy spell, and then she sits until it passes. She takes care of her personal needs. She has three sons at home: seventeen, twelve, and eleven years old. Her sons do the outdoor chores and help with indoor chores, such as cooking, laundry, cleaning, and sweeping. She has no hobbies, does not go to church, and does not read because she cannot read well. She mostly sleeps and lies around. Doctors have not put any limits on her physical abilities. Family and Children's Services treated her for emotional problems, and prescribed Prozac. Her husband passed away in 2004, and she lives off survivor's benefits. When she thinks of the past, she is

depressed and cries. Her blood pressure is high, and her doctor has not changed her medication. She does not like being around other people. (R. 29). The ALJ found plaintiff's testimony less than credible concerning the intensity, persistence, and limiting effects of her symptoms, to the extent they are inconsistent with her RFC assessment. (R. 30).

**The ALJ's Review of the Medical Evidence**

The following paragraphs summarize the ALJ's review of the medical evidence.

Plaintiff reported to Hillcrest Medical Center's emergency department on January 24, 2010, stating that she forgot to take her blood pressure medication, and she had a slight headache. Id. Plaintiff's physical examination and review of symptoms were normal except for her slight headache. The ALJ stated, "[I]f someone were suffering from a mental disorder as alleged, it is reasonable to assume that it would have at least been brought up during the evaluation." Id.

Tulsa Center for Behavioral Health evaluated plaintiff on February 18, 2010, and referred her to Tristesse Grief Center, OU Psychology, and Family and Children's Services. Tulsa Center for Behavioral Health diagnosed plaintiff with "depressive disorder, not otherwise specified, and benign hypertension," and assigned a GAF score of fifty-five. Id. The ALJ found the GAF score inconsistent with the alleged severity of plaintiff's impairments. (R. 30).

On July 29, 2010, plaintiff received a psychological consultative examination from Minor Gordon, Ph.D. (R. 31). After interviewing plaintiff and performing an evaluation, Dr. Gordon assessed her with mild depression not otherwise specified, and a GAF score of seventy. Id. The ALJ accorded "great weight" to Dr. Gordon's opinion, because "the findings . . . were consistent with the record as a whole, and based on a personal examination and a thorough review of the record." Id.

Family and Children's Services evaluated plaintiff on January 4, 2011. Plaintiff was diagnosed with depressive disorder and assigned a GAF score of forty-five. The ALJ stated, "This diagnosis and score were based on the claimant[sic] *subjective* symptoms of feeling sad, tearfulness, dwelling on negative thoughts, worrying about health, thoughts of death, irritability, low energy, low motivation, and increased sleeping." Id. (emphasis added). The ALJ noted that from January 12 to May 2, 2011, Family and Children's Services did not treat plaintiff, and when she returned it was for a medication refill. Id.

On May 27, 2011, Family and Children's Services evaluated plaintiff a second time. She was again diagnosed with major depressive disorder and assigned a GAF score of forty-five. Id. The ALJ stated, "The undersigned does not adopt this assessment because they appear to be based primarily on the claimant's subjective complaints, which have been determined to be not fully credible, and not supported by the totality of the medical evidence." Id.

**Plaintiff's RFC**

The ALJ concluded that plaintiff has the following RFC:

> She is able to perform a full range of light and sedentary exertion work. She is unable to climb ropes, ladders, and scaffolds, and is unable to work in environments where she would be exposed to unprotected heights and dangerous moving machinery parts or environments where she would be exposed to extremes of temperature (less than 50 degrees Fahrenheit or more than 90 degrees Fahrenheit), and no exposure to concentrations of dust, fumes, gases, etc. She is able to understand, remember, and carry out instructions in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision but is unable to interact with the general public more than occasionally, regardless of whether that interaction is in person or over a telephone. She is afflicted with symptoms from a variety of sources to include moderate intermittent pain and fatigue, as well as depression and allied mental disorders, all variously described, that are of sufficient severity so as to be noticeable to her at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations.

(R. 28). The ALJ concluded that the objective medical evidence contained within the record demonstrates that plaintiff's medically determinable impairment is not severe enough to prevent her from participating in substantial gainful activity, and she can work within the given RFC limitations without exacerbating her symptoms. Id.

The ALJ found that plaintiff has no past relevant work. (R. 32). Based on the testimony of the vocational expert, the ALJ found plaintiff is capable of unskilled work at light and sedentary exertion levels, such as, mailroom clerk, assembler, laundry sorter, clerical mailer, assembler, and that these jobs exist in sufficient numbers in the regional and national economy to preclude disability. (R. 33).

## ANALYSIS

Plaintiff raises two issues on appeal. First, plaintiff contends that the ALJ failed to fully develop the record. Second, plaintiff argues that the ALJ erred by affording controlling weight to a consultative examiner over a treating physician. (Dkt. 14). Both of plaintiff's arguments arise out of the same issue: whether the ALJ properly addressed her two GAF scores from Family and Children's Services. The Commissioner argues that the ALJ adequately developed the record. The Commissioner also contends that plaintiff's providers do not qualify as treating sources or other acceptable medical sources whose opinions warrant deference. (Dkt. 15). The Court addresses these issues in reverse order.

**Controlling Weight to a Consultative Examiner**

Plaintiff alleges that the ALJ placed deferential weight on the opinion of Dr. Gordon, a consultative examiner, over the opinion of treating physicians at Family & Children's Services. (Dkt. 14 at 8). Plaintiff argues that the ALJ must afford "specific, legitimate, reasons" when he disregards a treating physician's opinion and relies on a consultative examiner's opinion. (Dkt.

9

14 at 9). The Commissioner counters that plaintiff's argument, "is founded upon a counterfactual assumption, *i.e*., that providers at Family and Children's Services were in fact treating physicians. They were not." (Dkt. 15 at 5).

Plaintiff's argument fails because providers Kristy Matthes and Sarah Purley with Family and Children's Services do not qualify as treating sources. 20 C.F.R. § 416.913(a) defines acceptable medical sources as: licensed physicians, licensed or certified psychologists, licensed optometrists, podiatrists, or qualified speech-language pathologists. 20 C.F.R. § 416.913(a) (2013); see SSR 06-03p. Here, Matthes and Purley are not physicians and have only a bachelor of science and bachelor of arts degree, respectively. (R. 345-58). Providers, such as Matthes and Purley, are not acceptable medical sources. 20 C.F.R. § 416.913(a); see also Conger v. Astrue, 453 Fed.Appx. 821, 825 (10th Cir. 2011) (unpublished)[1] (holding a mental health caseworker is not an acceptable medical source as defined in 20 C.F.R. § 416.913(a)). In fact, Matthes and Purley would be classified as non-medical sources, which the regulations define to include "[p]ublic and private social welfare agency personnel." 20 C.F.R. § 416.913(d)(3). As such, their opinions are not considered medical opinions and are never entitled to controlling weight. See Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); 20 C.F.R. § 416.927(a)(2); SSR 06-03p.

Alternatively, plaintiff contends, "While the ALJ *may* consider [opinions of other sources], the ALJ is required to identify the deference given to such opinions." (Dkt. 16 at 3). Plaintiff points out that the ALJ concluded Matthes and Purley's opinions "deserved little weight," because they were based on plaintiff's subjective complaints, yet the ALJ never identified the subjective complaints. Id. Plaintiff further asserts, "These mere conclusions are

---

[1] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

insufficient to properly analyze the opinion of long-term treating sources like those of Matthes [sic] and Purley." Id.

Matthes and Purley are classified as "other sources," whose opinion can be considered to show the severity of the plaintiff's symptoms. 20 C.F.R. § 416.913(d). The ALJ's duty to examine medical opinions from other sources is less stringent than that of an acceptable medical source. See generally Doyal v. Barnhart, 331 F.3d 758, 762-64 (10th Cir. 2003). The regulations set out factors the ALJ should use when doing so. See 20 C.F.R. § 416.927(c)(1)-(6); SSR 06-03p. These factors include: (1) length and nature of the treatment relationship; (2) the evidence given by the other source that supports the opinion; (3) the consistency between the opinion of the other source and the record before the ALJ; (4) the other source's expertise or specialization, if any; and (5) other factors that tend to support or detract from the opinion. Id.; see also Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).

The ALJ provided three reasons for not affording the assessments of providers at Family and Children's Services any weight. (R. 31). The ALJ found that the assessments: (1) appear to be based primarily on the plaintiff's subjective complaints, which the ALJ identified and determined not credible;[2] (2) are unsupported by the totality of the medical evidence; and (3) are inconsistent with plaintiff's longitudinal mental health treatment records. Id. The ALJ also noted that from January 12 to May 2, 2011, plaintiff did not receive treatment from Family and Children's Services. Id. Contrary to plaintiff's contention, the ALJ specifically identified plaintiff's subjective complaints as "feeling sad, tearfulness, dwelling on negative thoughts, worrying about health, and thoughts of death, irritability, low energy, low motivation, and increased sleeping." Id. In addition, the records of Family and Children's services support the ALJ's statement in that three of the four GAF axes are supported only by narratives of plaintiff's

---

[2] Plaintiff does not challenge the ALJ's credibility finding.

11

subjective complaints. (R. 350, 357). Finally, the ALJ explained why he gave great weight to the consultative examiner's opinion. The ALJ stated, "The findings of Dr. Gordon are consistent with the record as a whole, and are based on a personal examination and a thorough review of the record." Id.

The above findings reflect consideration of the appropriate factors, including length and nature of treatment relationship, and the consistency between the opinion of the other source and the record before the ALJ. For these reasons, the ALJ properly evaluated the opinion of providers at Family and Children's Services. Thus, the Court concludes the ALJ's analysis and attribution of weight to Dr. Gordon's opinion does not constitute reversible error.

**Duty to Develop the Record**

Plaintiff argues that the ALJ failed to develop the record because he failed to clarify the discrepancy in the GAF scores plaintiff received from Family and Children's Services and the score she received from the consultative examiner, Minor Gordon, Ph.D. (Dkt. 14 at 7). Family and Children's Services assigned plaintiff a GAF of forty-five; Dr. Gordon assigned her a GAF of seventy. Plaintiff alleges that this failure was error because "A GAF score of 70 describes an individual with mild symptomology . . . but overall . . . indicates an individual who functions well"; whereas, "a GAF score of 45 describes a person with serious symptoms whose ability to function in a school or work setting is severely impaired." Id. Furthermore, plaintiff argues, "When striving to satisfy this burden [of developing the record], the defendant must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" Id. at 6. Plaintiff asserts that the ALJ is required to order additional testing to clarify the inconsistency between GAF scores. Id. at 8. In support of her argument, plaintiff cites Lashley v. Sec'y of Health & Human Servs., 708 F.2d 1048, 1051-52 (6th Cir. 1983).

In Lashley, the Sixth Circuit considered whether the ALJ failed to fulfill his duty to adequately develop the record and provide an unrepresented plaintiff with a full and fair hearing. Lashley, 708 F.2d at 1049-51. During the ALJ hearing, the plaintiff was superficially questioned about his daily activities and physical limitations, but the ALJ failed to probe into his capabilities of sustaining those activities, or the adverse consequences he suffered because of the activities. Id. at 1052. More importantly, the ALJ's examination of plaintiff's last place of employment was particularly lacking, as he did not obtain any information about why plaintiff was forced to leave his job after a short time. Id. at 1053. In finding that the plaintiff did not receive a full and fair hearing, the court reasoned that the plaintiff was unrepresented and inarticulate, that the ALJ's inquiry was hurried and incomplete, and that thorough questioning would have "undoubtedly (sic) provided more probative information concerning [plaintiff's] physical limitations." Id. The court focused, in particular, on the fact that plaintiff was not represented. Id. at 1051. In such situations, "the ALJ has a duty to exercise a heightened level of care and assume a more active role in the proceedings." Id. Thus, the court found that the ALJ had failed to fully develop the record because he did not "scrupulously and conscientiously probe…for all the relevant facts" when a plaintiff is unrepresented. Here, plaintiff was represented by counsel at the hearing and adequately questioned by both the ALJ and counsel. (R. 40, 41-81). Lashley does not support plaintiff's position.

In addressing the substance of plaintiff's argument, the Court initially notes that the Tenth Circuit has long held that "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The Tenth Circuit has specifically identified GAF scores as evidence that must be considered but need not be discussed. See Luttrell v. Astrue, 453

Fed.Appx. 786, 792 (10th Cir. 2011) (unpublished); Zachary v. Barnhart, 94 Fed.Appx. 817, 819 (10th Cir. 2004) (citing Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002)). Further, the value of GAF scores is limited in assessing residual functional capacity when it stands by itself with no explanation of the specific limitations it reflects. See Harper v. Colvin, 528 Fed.Appx. 887, 921-92 (10th Cir. 2013) (unpublished); Atkinson v. Astrue, 389 Fed.Appx. 804, 806 (10th Cir. 2010) (unpublished). Most recently, the Tenth Circuit noted that the new Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) "has discontinued [the use of the GAF score] because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" Krchmar v. Colvin, 548 Fed.Appx. 531, 534 n. 2 (10th Cir. 2013) (unpublished). Accordingly, although plaintiff's argument relies heavily on the ALJ's evaluation of the GAF scores, the ALJ was not required to discuss them in order to make a determination of plaintiff's residual functional capacity. However, because the ALJ did discuss the GAF scores, the Court has reviewed the ALJ's analysis to determine if it was legally correct.

The Tenth Circuit, in Keyes-Zachary v. Astrue, 695 F.3d 1156, 1164 (10th Cir. 2012), provides a road map for resolving this issue. In Keyes, the plaintiff argued that the ALJ erred when he failed to provide any analysis from which it could be determined what weight he gave a mental health assessment performed by a therapist who was neither a physician nor a psychologist. Id. at 1163. The Tenth Circuit first noted that much of the therapist's report included a narrative summary of the plaintiff's statements and that the ALJ was not required to assign any weight to the narrative. Id. Second, the Tenth Circuit considered those portions of the therapist's report that contained opinions, including the therapist's assignment to the plaintiff of a GAF score of 46, and a highest GAF score of 50 in the previous year. Id.

As to the GAF score, the Tenth Circuit noted that the score was of concern since the vocational expert "testified that scores in this range would eliminate all jobs because a person with these GAF scores cannot maintain a job." Id. at 1164. Moreover, the Tenth Circuit noted that the therapist's assigned GAF score was "inconsistent with other GAF evidence in the record and that the ALJ did not explain how he weighed the conflicting GAF evidence." Id. In finding that reversal was not required, the Tenth Circuit relied on two lines of reasoning: (1) that the ALJ's decision is sufficient if it permits the court to follow the ALJ's reasoning and, given the vocational expert's testimony, "it is obvious that the ALJ gave little or no weight to [the therapist's] GAF opinion" because had he assigned great weight to it, the ALJ would have developed a different mental RFC, id.; and (2) that Dr. Minor Gordon, the same psychologist who rendered the GAF opinion relied upon by the ALJ here, assigned the plaintiff a GAF score of 65, and Dr. Gordon was an acceptable medical source. Id.

Here, as in Keyes-Zachary, plaintiff correctly points out that there are inconsistent GAF scores in the record. Also similar to Keyes-Zachary, however, is the fact that the scores relied on by plaintiff are not from an acceptable medical source. In light of the ALJ's RFC, these similarities alone are sufficient bases on which to follow the ALJ's reasoning and reach the same result in this case. Moreover, the ALJ here did evaluate each GAF score and provided his reasoning for rejecting the Family and Children's Services scores, stating that they were based primarily on plaintiff's subjective statements. As noted above, a review of the records from Family and Children's Services confirms the ALJ's statement. Of the four axes used to determine plaintiff's GAF scores, Family and Children's Services relied solely on plaintiff's subjective statements for three of them. (R. 350, 357). In addition, there is substantial evidence in the record to support the ALJ's statement that the GAF scores given by Family and Children's

Services are not consistent with the record as a whole. <u>See</u> *supra* at 2-5. Thus, the facts here are even more favorable to the ALJ than in <u>Keyes-Zachary</u>, where the ALJ conducted no analysis at all. Therefore, reversal on this issue is not warranted.

## **Conclusion**

Based on the foregoing, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 15th day of December, 2014.

_____
T. Lane Wilson
United States Magistrate Judge